1   PAUL J. PFINGST, ESQ. (Bar No. 112967)
    CHRISTINA M. DENNING, ESQ. (Bar No. 211137)
2   HIGGS FLETCHER & MACK LLP
    401 West "A" Street, Suite 2600
3   San Diego, CA  92101-7913
    TEL:  (619) 236-1551
4   FAX:  (619) 696-1410

5   Attorneys for Plaintiffs
    SHAKINA ORTEGA, individually, and as successor
6   of interest of VICTOR ORTEGA, deceased;
    TAMIA ORTEGA, a minor, by and through her
7   guardian Shakina Ortega; and
    JACOB ORTEGA, a minor, by and through his
8   guardian Shakina Ortega

9

10              **UNITED STATES DISTRICT COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12   SHAKINA ORTEGA, individually,          CASE NO. 13-CV-87-LAB (JMA)
     and as successor of interest of
13   VICTOR ORTEGA, deceased;               **PLAINTIFFS' AMENDED**
     TAMIA ORTEGA, a minor, by and          **OPPOSITION TO DEFENDANTS'**
14   through her guardian Shakina Ortega;   **MOTION FOR SUMMARY**
     and                                    **JUDGMENT, OR IN THE**
15   JACOB ORTEGA, a minor, by and          **ALTERNATIVE PARTIAL**
     through his guardian Shakina Ortega,   **SUMMARY JUDGMENT**

16                        Plaintiffs,
                                            CASE FILED:     January 11, 2013
17   v.                                     TRIAL DATE:     Not Yet Set

18   SAN DIEGO POLICE
     DEPARTMENT, a public entity;           Judge:     Hon. Larry Alan Burns
19   JONATHAN MCCARTHY, an                  Dept.:     14
     individual;
20   CITY OF SAN DIEGO, a public
     entity; and
21   DOES 1 through 10,

22                        Defendants.

23

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

                              Case No. 13-CV-87-LAB (JMA)
            PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
                MOTION FOR SUMMARY JUDGMENT, OR IN THE
                    ALTERNATIVE PARTIAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.   LEGAL STANDARD .................................................................................. 3

III.  ARGUMENT .............................................................................................. 3

    A.   Genuine Factual Disputes Preclude Summary Judgment
        on Plaintiffs' 42 U.S.C. Section 1983 Cause of Action
        Against Both Officer McCarthy and the City; Plaintiffs
        Agree to Dismiss this Cause of Action Against SDPD, only ............... 4

        1.   Qualified Immunity Does Not Shield Officer
               McCarthy from Liability because Facts Material
               to the Immunity Analysis are in Genuine Dispute ........................ 4

        2.   Genuine Issues of Material Fact Exist as to
               Whether Officer McCarthy's Use of Deadly
               Force Violated Victor's Fourth Amendment Rights ...................... 4

        3.   Genuine Disputes of Material Fact Remain as to Whether
               Officer McCarthy Violated the Fourteenth Amendment's
               Due Process Clause through Deliberate Indifference to
               Victor's Rights Prior to the Foot Chase and through
               Purpose to Harm Victor After the Arrest Attempt ...................... 12

        4.   Genuine Issues of Material Fact Exist as to Whether
               Victor's Fourth and Fourteenth Amendment Rights
               Were Clearly Established at the Time of the Shooting .............. 15

         5.   Genuine Disputes of Material Fact Remain as
               to whether the SDPD's Failure to Coherently
               Enforce its Policies Regarding Secondary
               Weapon Holsters Resulted in Victor's Death ............................. 16

    B.   Genuine Disputes of Material Fact Preclude Summary
        Judgment on  Plaintiffs' Second and Third  Causes of
        Action for Violation of California Civil Rights Acts .......................... 22

        1.   California Civil Code § 51.7 ....................................................... 22

        2.   California Civil Code § 52.1 ....................................................... 22

i

C.     Genuine Disputes of Material Fact Preclude Summary
       Judgment on Plaintiffs' Fourth Cause of Action for Assault
       and Battery ........................................................................................23

D.     Genuine Disputes of Material Fact Preclude Summary
       Judgment on Plaintiffs' Fifth Cause of Action for Wrongful
       Death ................................................................................................23

E.     Genuine Disputes of Material Fact Preclude Summary
       Judgment on Plaintiffs' Sixth Cause of Action for Negligence..........24

F.     The City May Pay Punitive Damages.................................................25

IV.    CONCLUSION ............................................................................................25

ii

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986) .......................................... 3, 5, 8, 10, 12, 14, 15, 16, 21

5

6

Austin B. v. Escondido Union Sch. Dist.,
149 Cal.App.4th 860, 880-881 (2007) ................................................................22

7

Benigni v. City of Hemet,
879 F.2d 473, 479-480 (9th Cir. 1989) ................................................................4

8

9

Bernat v. Cal. City Police Department,
2011 WL 1103130 at *7........................................................................................22

10

Bernat v. Cal. City Police Department,
2011 WL 1103130, at *8 (E.D. Cal. March 21, 2011)........................................24

11

12

Bryan v. MacPherson,
630 F.3d 805, 823 (9th Cir. 2010).........................................................................5

13

Bulkley v. Klein,
206 Cal.App.2d 742, 751 (Cal.App. 4th Dist. 1962) ...........................................24

14

15

City of Canton v. Harris 489 U.S.
378, 385 (1988) ...................................................................................................17

16

County of Sacramento v. Lewis,
523 U.S. 833, 836 (1998) ...............................................................................12, 13

17

18

Crawford-El v. Britton,
523 U.S. 574, 598 (1998) ......................................................................................4

19

Davis v. Township of Hillside,
190 F.3d 167, 174 (3d Cir. 1999)........................................................................14

20

21

Dela Torre v. City of Salinas,
2010 WL 3743762 at *6........................................................................................22

22

Deorle v. Rutherford, 272 F.3d 1272, 1283-84
(9th Cir. 2001) ......................................................................................................5

23

24

Edson v. City of Anaheim,
63 Cal.App.4th 1269, 1273 (Cal.Ct.App.1998) ..................................................23

25

Ewolsky v. City of Brunswick,
287 F.3d 492 (6th Cir. 2002)................................................................................13

26

27

Gabales v. County of San Joaquin,
2009 WL 2924037 at *15 (E.D.Cal. 2009) .........................................................22

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

TABLE OF AUTHORITIES
(continued)

Page

Garcia v. City of Imperial,
2010 WL 3834020, at *14 (S.D. Cal. 2010) ...........................................................24

Gibson v. County of Washoe,
290 F.3d at 1175, 1186 (9th Cir. 2002)..................................................................17

Gomez v. City of Fremont,
730 F.Supp.2d 1056, 1067 (N.D. Cal. 2010) .........................................................24

Graham v. Connor,
490 U.S. 386, 397 (1989) ...........................................................................5, 8, 12

Graham.  Saman v. Robbins,
173 F.3d 1150, 1157 (9th Cir. 1999).....................................................................23

Gray v. DeMarco, 1999
WL 390848 (N.D. Cal. June 9, 1999) ...................................................................24

Harlow v. Fitzgerald,
457 U.S. 800, 818 (1982) ..............................................................................4, 15

Hayes v. County of San Diego,
57 Cal.4th 622 (9th Cir. 2013) .............................................................................24

Jones v. Kmart Corp.,
17 Cal.4th 329, 331 (1998)...................................................................................22

Lal v. State of California,
No. 12-15266, 2014 WL 1272781 (9th Cir. March 31, 2014)................................7

Lalonde v. County of Riverside,
204 F.3d 947, 959 (9th Cir. 2000)...........................................................................5

Monell v. Department of Social Services of City of New York,
436 U.S. 658 (1978) ..............................................................................2, 17, 21

Moreland v. Las Vegas Metro Police Department,
159 F.3d 365, 373 (9th Cir. 1998)........................................................................13

Moreno v. Baca,
431 F.3d 633, 638 (9th Cir. 2005)..........................................................................4

Plumeau v. School Dist. # 40,
130 F.3d 432, 438 (9th Cir. 1997)..........................................................16, 18, 21

Porter v. Osborn,
546 F.3d 1131, 1139 (9th Cir. 2008)...............................................................12, 14

Price v. Sery, 513 F.3d 962, 966
(9th Cir. 2008) ...................................................................................................17

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

**TABLE OF AUTHORITIES**
(continued)

Page

Santos v. Gates,
 287 F.3d 846, 853 (9th Cir. 2002)...........................................................................24

Saucier v. Katz,
 533 U.S. 194, 202 (2001) .................................................................................4, 16

Scott v. Henrich,
 39 F.3d 912, 915 (9th Cir. 1994)...............................................................................3

Shoyoye v. County of Los Angeles,
 203 Cal.App.4th 947, 959 (2012)...........................................................................23

Smith v. City of Hemet,
 394 F.3d 689, 704 (9th Cir. 2005)...........................................................5, 12, 24

Through Waugh v. Pearce,
 954 F.2d 1470, 1474 (9th Cir. 1992)......................................................................16

Ulrich v. City & County of San Francisco,
 308 F.3d 968, 984-85 (9th Cir. 2002) ....................................................................17

Wilson v. Layne,
 526 U.S. 603, 615 (1999) ......................................................................................15

## Statutes

California Civil Code section 51.7 ......................................................................2, 22

California Civil Code section 52.1 ...........................................................................22

Federal Rule of Civil Procedure 56 .....................................................................3, 16

Government Code section 820.2................................................................................23

U.S.C. section 1983 ...............................................................................................2, 4

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

v

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

# I.

## **INTRODUCTION**

On June 4, 2012, Officer Jonathan McCarthy of the San Diego Police Department ("SDPD") shot and killed Mr. Victor Ortega ("Victor") while in the process of arresting him on a routine domestic disturbance matter. At the time, Officer McCarthy kept his secondary firearm in a flimsy "sleeve" holster on his ankle, and while trying to detain Victor, Officer McCarthy's gun slipped by force of gravity to the ground, causing him to panic and fatally shoot an *unarmed* Victor while he was in a submissive, flexed forward position. SDPD had never approved or inspected the holster in which Officer McCarthy's secondary gun was carried. There were two gunshots. The first hit Victor in the abdomen. The second hit him in the back of the head as he fell forward. There were no eye witnesses to the shooting. Following the incident, Officer McCarthy, the only witness to survive the incident, gave contradictory accounts of what took place. Victor's heirs brought suit against Officer McCarthy, SDPD and the City of San Diego for: (1) violation of his Constitutional rights pursuant to 42 U.S.C. section 1983; (2) violation of California Civil Code section 51.7 (Ralph Civil Rights Act); (3) violation of California Civil Code section 52.1(b) (Tom Bane Civil Rights Act); (4) Assault and Battery; (5) Wrongful Death; and (6) Negligence.

Defendants now move for summary judgment on the ground there is no genuine issue of material fact as to any of Plaintiffs' causes of action, and, as a result, they are entitled to judgment in their favor as a matter of law. Defendants are wrong. In the following pages, Plaintiffs demonstrate genuine disputes of material fact as to each of their causes of action.

First, Plaintiffs present evidence establishing a genuine dispute of fact as to the circumstances that might otherwise afford Officer McCarthy qualified immunity for a Fourth Amendment violation. The physical evidence indicates that Officer McCarthy was in a superior position to Victor, and he was far enough away from

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

1

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1   Victor that there was no tattooing or stippling from the gun on Victor's person.

2   This shows that Victor was not close enough to Officer McCarthy to cause Officer

3   McCarthy to reasonably feel threatened. Based on the evidence, there is a genuine

4   dispute as to whether shooting and killing Victor violated his clearly established

5   Constitutional right to be free from excessive force. Second, Plaintiffs present

6   evidence establishing genuine issues of fact material to whether Officer McCarthy

7   violated Victor's Fourteenth Due Process rights on at least two occasions under

8   *both* the "deliberate indifference" standard and the "purpose to harm" standard.

9   Third, Plaintiffs present evidence of a systemic breakdown within SDPD regarding

10  requirements for secondary weapon holsters and inspections of them. There exists

11  a genuine dispute of facts material to whether these breakdowns amount to policies

12  evincing deliberate indifference to Victor's Constitutional rights under section 1983

13  and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658

14  (1978). Fourth, under a Fourth Amendment reasonableness standard, which

15  governs Plaintiffs' state-law causes of action with the exception of that filed under

16  section 51.7,[1] Plaintiffs demonstrate genuine disputes of material fact as to all

17  causes of action. Accordingly, Defendants' motion for summary judgment must be

18  denied as to all causes of action.[2]

19  ///

20  ///

21  ___

[1] California Civil Code section 51.7 provides that all persons in California have a right to be free
22  from violence committed against them because of their race. Defendants have produced pre-
    employment screening records for Officer McCarthy that are redacted as to biases held by Officer
23  McCarthy and whether he has violent tendencies. There is an ongoing dispute regarding the
    discoverability of the records that has required Court intervention and is unresolved. (See Docket
24  Nos. 56 and 57; Amended Rule 56(d) Declaration of Christina Denning ("Rule 56(d) Dec.").)

25  [2] This opposition is based on the concurrently filed Amended Declaration of Christina Denning
26  and Exhibits A through ZZ thereto ("Denning Dec."), Rule 56(d) Dec., Declaration of Omega
    Campbell ("Omega Dec."), Declaration of Naomi Campbell and exhibits thereto ("Naomi Dec."),
27  and Declaration of Shakina Ortega ("Shakina Dec."). All exhibits are authenticated in the
    concurrently filed Denning Dec.
28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

2

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

## II.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). Summary judgment will not lie if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could retain a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether a genuine dispute exists, a District Court does not make credibility determinations, rather, the evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in the non-moving party's favor. *Id.* at 255.

## III.

## ARGUMENT

In cases where the suspect is dead, the Court must ensure the officer is not taking advantage of the fact that the witness most likely to contradict his story, the decedent, is not alive to testify. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). The Court must carefully examine all of the evidence in the record, i.e., medical reports, *contemporaneous statements by the officer* and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts. *Id.* The Court must also look at the circumstantial evidence that would tend to discredit the officer's story, and consider whether this evidence could convince a rational fact finder that the officer acted unreasonably. *Scott v. Henrich* at 915.

/ / /

/ / /

/ / /

/ / /

/ / /

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

3

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

A.   **Genuine Factual Disputes Preclude Summary Judgment on Plaintiffs' 42 U.S.C. Section 1983 Cause of Action Against Both Officer McCarthy and the City; Plaintiffs Agree to Dismiss this Cause of Action Against SDPD, only.**

1.   **Qualified Immunity Does Not Shield Officer McCarthy from Liability because Facts Material to the Immunity Analysis are in Genuine Dispute.**

Defendants move for summary judgment on Plaintiffs' section 1983 cause of action against Officer McCarthy for excessive force in violation of the Fourth Amendment on two grounds:  (1) Officer McCarthy's actions were not unconstitutional; and (2) Officer McCarthy is entitled to qualified immunity for his actions.  Because the qualified immunity analysis subsumes analysis of the Constitutionality of the officer's actions, Plaintiffs address the two issues as one.

Qualified immunity is an affirmative defense.  Defendants carry the burden of proof. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) ["Because the moving defendant bears the burden of proof on the issue of qualified immunity, he or she must produce sufficient evidence to require the plaintiff to go beyond his or her pleadings."] *Benigni v. City of Hemet*, 879 F.2d 473, 479-480 (9th Cir. 1989).  If it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted, then qualified immunity does not apply. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Officer McCarthy is <u>not</u> shielded by qualified immunity if Plaintiffs can show genuine factual disputes material to whether:  (1) Officer McCarthy's actions violated a Constitutional right; and (2) the right was "clearly established" at the time of the conduct in question. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

2.   **Genuine Issues of Material Fact Exist as to Whether Officer McCarthy's Use of Deadly Force Violated Victor's Fourth Amendment Rights.**

To determine whether a police officer's conduct amounted to an unconstitutional use of excessive force, the Court must examine the allegations under the Fourth Amendment's prohibition on unreasonable seizures. *Bryan v.*

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

*MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010). The Court must determine "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). In order to determine whether a police officer's conduct was objectively reasonable, the Court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Bryan*, 630 F.3d at 823. Additionally, the Fourth Amendment test for reasonableness "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. A simple statement by an officer that he fears for his safety or the safety of others is not enough. There must be objective factors to justify such a concern. *Young v. County of Los Angeles*, 655 F.3d, 1156, 1163 (9th Cir. 2011).

There are five factors relevant to the reasonableness inquiry. The Court first looks at the three *Graham* factors: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officer or others, and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Graham*, 490 U.S. at 396. The Ninth Circuit has established two additional factors: (4) the availability of alternative methods, even though officers are not required to use the least intrusive degree of force possible; and (5) the giving of a warning or the failure to do so. *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005); *Deorle v. Rutherford*, 272 F.3d 1272, 1283-84 (9th Cir. 2001). A jury can conclude that the officer used force in excess of what was reasonable, even if [decedent] was resisting arrest at the time. *Lalonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).

Here, an analysis of each of the five factors drawing all justifiable inferences in Plaintiffs' favor, *see Anderson*, 477 U.S. at 248, contradicts Defendants' assertion that "[t]he evidence is clear; Officer McCarthy feared for his life when he saw Victor reach for his primary duty weapon." (Defs.' Mot. 11:2-3.) In fact, the

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

5

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1   evidence is far from clear.  As detailed below, genuine disputes exist as to the facts
2   material to each *Graham* factor, with the exception of a lack of warning, which
3   Defendants do not dispute.

4       **The Severity of the Crime at Issue:**  Defendants contend that "Ortega had
5   committed a felony and was in the process of committing another."  (Defs.' Mot.
6   11-12 (referring to felony domestic violence and assault and battery on a police
7   officer with a deadly weapon.)  Notably, Defendants cite no evidence in support of
8   either of these legal conclusions.

9       When Officer McCarthy arrived on the scene on June 4, 2012, both arriving
10  officers saw that Shakina Ortega ("Shakina"), who initiated the domestic violence
11  call, appeared uninjured.  (Ex. A, 118:8-24; Ex. B, 3:1-8; Ex. C, p. 84; Ex. V, Ex.
12  W, 30:20-21 and 39:7-10.)  Yet neither Officer McCarthy nor his partner, Officer
13  Maynard, stopped to investigate or even ask her what happened.  (Ex. A, 123:20-
14  131:10; Ex. C, p. 85.)  Considering Shakina did not appear to be injured, Officer
15  McCarthy had no cause beyond what he had heard over the radio to conclude that a
16  serious felony had taken place, or that one was in progress.  (Ex. D, 100:19-24; Ex.
17  F.)  Subsequent testimony by Shakina has revealed that Victor only kicked her by
18  accident, and he never punched her as she had originally indicated in the 911 call.
19  (Ex. A, 86:14-22, 89:19-90:12, 93:1-10, 93:23-94:2; 115:19-22 and 116:13-25.)
20  Had either officer even stopped for a moment to size up the situation and speak
21  with Shakina, or take a closer look at her alleged injuries, they would have
22  discovered this fact.  (Exhibit EE, p. 9, ¶ 3.)

23      As to assault and battery on a police officer with a deadly weapon, there is no
24  evidence beyond Officer McCarthy's testimony that Victor was reaching for either
25  of the officer's guns.  Officer McCarthy's original account of the events indicated
26  that Victor had in fact taken hold of and aimed the secondary weapon at the officer.
27  (Ex. K, 4:18-28.)  But this story changed shortly thereafter, and the physical
28  evidence belies it.  (Ex. C; Ex. D; Ex. H; Ex. I, 54:22-56:14 and 58:1-59:3; Ex.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

6

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1   VV.) The physical evidence also refutes Officer McCarthy's allegation that Victor
2   even touched the secondary weapon. Victor is excluded as being a source of DNA
3   on the gun. (Ex. WW, p. 77.) There was no tattooing or stippling on Victor's
4   hands as a result of the shooting, and Plaintiffs' reconstruction expert concludes
5   that there would have been if Victor was reaching for the primary weapon in close
6   range at the time of the shooting. (Ex. H, including pp. 3-6 of Exhibit 1 and p. 1 of
7   Exhibit 2.)

8        **Whether Victor Posed an Immediate Threat :** Even after arriving on
9   scene and concluding that Shakina did not appear to be hurt, Officer McCarthy
10   singlehandedly and without backup began what Defendants describe as "a long
11   chase and violent struggle." (Defs.' Mot. 10-11.) During that chase, Officer
12   McCarthy admits that Victor was unarmed, never took a swing at Officer McCarthy
13   and he was simply trying to get away. (Ex. C, pp. 94, 98-99; Ex. D, 87:23-88:11.)
14   It is undisputed that when the chase ended, Victor and Officer McCarthy were the
15   only two people in the breezeway.

16        Defendants analogize this case to *Lal v. State of California*, No. 12-15266,
17   2014 WL 1272781 (9th Cir. March 31, 2014), in which the Ninth Circuit affirmed a
18   grant of summary judgment when officers reasonably feared for their lives upon a
19   suspect's hurling large stones at them. (Defs.' Mot. 13.) *Under Defendants'*
20   *version of the facts*, the cases may be similar; Officer McCarthy may have
21   reasonably feared for his life *if Victor had, in fact, reached for each of his guns*
22   *within close range on two separate occasions*.

23        But Plaintiffs dispute Defendants' account of what happened. They present
24   their own facts, substantiated by the physical evidence, which support a different
25   theory - that Victor was submissive when killed, and that Officer McCarthy
26   panicked when he saw his own backup gun fall to the ground. (Ex. H and Exhibits
27   1 and 2 thereto; Ex. I, p. 407; Ex. TT, p. 23.) Plaintiffs present testimony of
28   multiple witnesses who interpreted what they saw and heard as Victor's eventual

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

7

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1   compliance. (Ex. U, ¶ 6; Ex. Z, 44:10-25, 94:13-16, 44:10-25, 53:4-11and 54:20-

2   55:2 and 108:1-11.)  Plaintiff's expert concludes that the absence of powder burns

3   and stippling on Victor's hands shows that he *could not have been close enough to*

4   *reach Officer McCarthy's primary weapon when he was killed.*  (Ex. H and

5   Exhibits 1 and 2 thereto; Ex. I.)

6        In short, Plaintiffs' evidence establishes a genuine dispute as to whether

7   Victor "pose[d] an immediate threat to the safety of officers or others." *Graham,*

8   490 U.S. at 396.

9        **The Availability of Alternative Methods:**  Drawing justifiable inferences

10  from both Defendants' and Plaintiffs' evidence, a reasonable jury could find that

11  Officer McCarthy needlessly and unreasonably instigated the situation that killed

12  Victor. S*ee Anderson*, 477 U.S. at 248.  Officer McCarthy should not have chased

13  Victor through the apartment complex without conducting even a cursory

14  investigation of the 911 call. (Ex. EE, p. 9.)  According to Commission on Peace

15  Officer Standards and Training ("POST") tactical guidelines, when engaging in a

16  solo foot pursuit, Officer McCarthy should have first investigated the nature of the

17  911 call, at least briefly, before searching for the suspect.  (*Id.*)  Officer McCarthy

18  did not follow these guidelines, and he was not  properly trained to follow them at

19  the time of the incident.  (Ex. EE, p. 9, Ex. FF, p. 4.)  Further, Plaintiffs' police

20  procedures expert sets forth numerous tactical alternatives available to Officer

21  McCarthy during the confrontation. (Ex. EE., pp. 9-10; Ex. FF, pp. 2.)

22       Second, even after engaging in a foot pursuit, the only reason that the

23  confrontation with Victor, who was unarmed, escalated to the use of deadly force is

24  because Officer McCarthy unreasonably chose to wear a flimsy, unsanctioned,

25  elastic ankle holster that readily allowed a gun to fall out onto the ground in front of

26  a suspect. (Ex. H, including p. 9 of Exhibit 1 and p. 2 of Exhibit 2; Ex. OO, 76:6-

27  15, Ex. EE, p. 11.)  Officer McCarthy admits that his decision to use deadly force

28  was based on the fact his secondary weapon had come loose. (Ex. C, p. 98.)

·IIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

8

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1    Third, Officer McCarthy admits that he had a nonlethal "TASER" in his hand
2    just prior to shooting Victor. (Ex. C, pp. 95-96.) He testified that he reholstered
3    the TASER when he noticed his ankle holster had failed and his gun was loose.
4    (*Id.*)

5    Defendants' reconstruction expert, Luke Haag, wrote a textbook on shooting
6    incident reconstruction, in which an entire section is devoted to determining the
7    shooter location and orientation to the suspect. (Ex. QQ, 29:5-10.) Yet in this case,
8    Mr. Haag did not even attempt to determine how far apart Victor was from Officer
9    McCarthy at the time of the shooting. (*Id.* at QQ, 18:21-25.) Plaintiffs'
10   reconstruction expert, Dr. Turvey, testified that he was surprised that Mr. Haag
11   never conducted live testing to report on the distance between the officer and
12   Victor; as the defense expert, he had access to the gun. (Ex. UU, 130:1-12.)

13   By contrast, Dr. Turvey's expert opinion is that Officer McCarthy was not
14   within physical striking distance of Victor at the time of the shooting, but was at
15   least three to four feet away. (Ex. H, including pp. 3-6 of Exhibit 1 and p. 1 of
16   Exhibit 2.) Given the distance between Officer McCarthy and Victor, Plaintiffs'
17   police procedures expert, Roger Clark, testified that firing on an unarmed suspect
18   was not something that any reasonable officer on the scene would have done. (Ex.
19   FF, p. 2.) Instead, a reasonable officer who was that far away from a suspect, could
20   have backed away, retrieved the secondary weapon that had already been knocked
21   away from the suspect, used less-than-lethal force such as the TASER, or at least
22   warned the suspect that he would shoot prior to doing so. (*Id.*) Sergeant Howie,
23   who led the Homicide Investigation and is no longer with that division, *admitted*
24   that there were "a thousand" alternate ways that Officer McCarthy could have
25   ///
26   ///
27   ///
28   ///

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

9

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  responded to the situation instead of killing Victor.[3]  (Naomi Dec., ¶ 5; Ex. II, 17:9-

2  16.)

3       The SDPD's Use of Force Matrix states that:

4            No officer may discharge a firearm in the performance of
             duty except:
5

6            When the officer has a reasonable belief that a subject (or
             animal) poses and imminent threat of death or serious
7            bodily injury to the officer or another person;

8            When necessary to apprehend a fleeing suspect if there is
             probably cause to believe the suspect has committed a
9            felony involving the infliction or threatened infliction of
             death or serious bodily injury, and the officer reasonably
10           believes the suspect is armed with a deadly weapon and
             the suspect's escape would pose an imminent threat to the
11           officer or others

12  (Defs.' Mot., 49-12, 7.)

13       Officer McCarthy could not have had a reasonable belief that the *unarmed*

14  Victor posed an imminent threat of death or serious bodily injury to him,

15  considering he had his primary gun aimed at Victor from a distance and from a

16  superior position.[4]  (Ex. FF, p. 2.)  Accordingly, under Plaintiffs' theory and the

17  evidence produced in support of it, SDPD's Use of Force Matrix prohibits Officer

18  McCarthy's conduct.  (Defs.' Mot., Doc. 49-12, 7.)  A reasonable officer on the

19  scene would have used alternative means of subduing a suspect consistent with the

20  force matrix. *See Smith,* 394 F.3d at 701.  Plaintiffs' theory and evidence supports

21  a reasonable jury's findings that Officer McCarthy had alternative non-deadly

22  tactics available to him. *See Anderson*, 477 U.S. at 248.

23       **Lack of Warning:**  Officer McCarthy never gave a warning prior to shooting

24  and killing Victor.  (Ex. D, 77:18-20.)  Three witnesses testified to this effect, and

25

26  [3] Disturbingly, Sergeant Howie also admitted that Officer McCarthy "*had had enough*" and "*was
    tired so he decided to end it.*" (Naomi Dec., ¶¶ 2-5.)  This is probably because he injured himself
27  the day before and had wine the night before the shooting. (Ex. D, 93:1 - 95:13, Ex. GG.)

28  [4] Officer McCarthy admits he pushed the secondary weapon out of Victor's reach. (Ex. C, p. 97.)

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

10

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  Officer McCarthy admitted that he did not warn before shooting to kill. *Deorle*,

2  272 F.3d at 1283-84.

3  **Whether Victor Was Actively Resisting Arrest:**  There is no dispute that

4  Victor ran from Officer McCarthy and that Officer McCarthy tried to arrest him.

5  However, as noted above, Plaintiffs provide expert reports and witness testimony

6  showing that, at the time he was shot, Victor was submissive to Officer McCarthy

7  and in compliance with Officer McCarthy's commands. (Ex. H and Exhibits 1 and

8  2 thereto; Ex. I, Ex. U, ¶ 6; Ex. Z, 44:10-25, 53:4-11, 54:20-55:2, 94:13-16 and

9  108:1-11.)  Officer McCarthy admits that Victor was facing him during the

10  shooting. (Ex. I, p. 407; Ex. TT, p. 23.)  Based on the trajectory of the bullets, per

11  the Medical Examiner's report, Victor would have had to be in a flexed position,

12  waist and neck bent forward and down, when the officer shot him in the abdomen

13  and back of the neck. (Ex. I, p. 407; Ex. TT, p. 23.)

14  Dr. Turvey's Rule 26 reports corroborate these findings, concluding that

15  Officer McCarthy was superior to Victor at the time of the shooting. (Ex. H and

16  Exhibits 1 and 2 thereto.)  Dr. Turvey based this conclusion on physical evidence:

17  (1) the grazing wound near Victor's belly button; (2) the lack of stippling/tattooing

18  anywhere on Victor's body (which occurs when a gun is fired at close range); and

19  (3) the steep trajectory of the bullets.  (*Id.*)  At the time the first shot was fired,

20  Victor was bowed down or bent forward.  (*Id.*)  By demonstrating that the suspect

21  was at least three to four feet away[5] from the officer when he was shot,[6] Plaintiffs'

22  evidence contradicts Officer McCarthy's testimony that Victor's "hands were

23  within one to two feet of [his] primary firearm." (Defs.' Mot., Doc. 49-10, ¶ 28.)

24

25  [5] This is consistent with the testimony of two witnesses, the Owen brothers, that they heard

26  footsteps before the gunshots. Dr. Turvey notes that the particles of gunshot residue found on
   Victor's hands were from being handcuffed by Officer McCarthy after Officer McCarthy fired his

27  gun, not from reaching for a gun. (Ex. UU, 127:8-20.)

28  [6] Defendants present no contradictory expert evidence on this point.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

11

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1    Finally, Victor's last words - *"Are you kidding me? I'm gonna sue you!"* -

2    substantiated by multiple witnesses, are not consistent with physically resisting

3    arrest. (See e.g., Ex. P, pp. 311-312; Ex. Q, 50:12-14; Ex. R, p. 316; Ex. T, p. 236,

4    Ex. U, ¶ 2; Ex. Z, 94:13-16.) In the last moments before the shooting, witnesses

5    testified to hearing no sounds consistent with a violent struggle, and only the sound

6    of footsteps before Victor was executed. (See e.g., Ex. P, pp. 311-312; Ex. Q,

7    50:12-14; Ex. R, p. 316; Ex. S, 107:15-18; Ex. T, p. 236, Ex. U, ¶ 2; Ex. Z, 94:13-

8    16.) A reasonable jury could take these facts into account in weighing Officer

9    McCarthy's testimony in light of contradictory physical evidence, expert testimony

10   and witness testimony. Thus, Plaintiffs' evidence establishes a genuine dispute as to

11   whether Victor was resisting arrest. *Graham,* 490 U.S. at 396.

12   In sum, genuine factual disputes exist that are material to each factor

13   analyzed by this Court to evaluate whether Victor's Fourth Amendment right was

14   violated. *Graham,* 490 U.S. at 396; *Smith,* 394 F.3d at 701; *Deorle,* 272 F.3d at

15   1283-84. Drawing all justifiable inferences in Plaintiffs' favor and analyzing the

16   incident from the perspective of a reasonable officer, Officer McCarthy's use of

17   deadly force against Victor violated the Fourth Amendment. *See Anderson*, 477

18   U.S. at 248.

19          **3.    Genuine Disputes of Material Fact Exist as to Whether
                    Officer McCarthy Violated the Fourteenth Amendment's**

20          **Due Process Clause through Deliberate Indifference to
                    Victor's Rights Prior to the Foot Chase and through**

21          **Purpose to Harm Victor After the Arrest Attempt.**

22   Defendants contend that in order to prove that Officer McCarthy violated

23   Victor's Fourteenth Amendment Due Process rights, Plaintiffs must show that

24   Officer McCarthy acted with a purpose or intent to harm Victor at all stages of the

25   incident in question. *See Porter v. Osborn,* 546 F.3d 1131, 1139 (9th Cir. 2008);

26   *County of Sacramento v. Lewis,* 523 U.S. 833, 836 (1998). Plaintiffs disagree that

27   this is the appropriate standard to apply to Officer McCarthy's *deliberate* actions

28   prior to the chase. Officer McCarthy's deliberate actions should be held to the

·IGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  lesser standard of deliberate indifference, and the purpose to harm standard should

2  be applied to the officer's actions during the chase.  Plaintiffs present evidence

3  sufficient to establish genuine disputes of fact material to whether Officer

4  McCarthy's actions violated each standard.

5       The critical question in determining the appropriate standard is whether the

6  circumstances allowed the officer time to fully consider the potential consequences

7  of his conduct.  *Moreland v. Las Vegas Metro Police Department,* 159 F.3d 365,

8  373 (9th Cir. 1998).  "As the very term 'deliberate indifference' implies, the

9  standard is sensibly employed only when actual deliberation is practical."  *County*

10  *of Sacramento v. Lewis,* 523 U.S. 833, (1998).  When the facts of a case fall within

11  the middle range, the appropriate standard of review is deliberate indifference.

12  *Ewolsky v. City of Brunswick,* 287 F.3d 492 (6th Cir. 2002) (relying on *Moreland*

13  and *Lewis*).

14       The deliberate indifference standard should apply to cover Officer

15  McCarthy's actions to the extent that he had time to deliberate before he instigated

16  the foot chase.  Before Officer McCarthy decided to search for Victor in his car and

17  later chase him on foot, he did, in fact, have the time to stop and think, as there was

18  no crime in progress and Shakina appeared uninjured.  (Ex. D, 100:19-24.)  Prior

19  to the subsequent chase, no unexpected situation presented itself that would have

20  necessitated split-second decision-making.  (Ex. A, 123:20-131:10; Ex. D, 24:3-

21  25:4; Ex. E.)  Still, Officer McCarthy chose to initiate a solo search for Victor and a

22  subsequent foot chase through a densely populated residential complex without first

23  investigating the 911 call.  (*Id.*)  By doing so without backup and without regard for

24  the unsanctioned elastic ankle holster that might have released a firearm at any

25  time, Officer McCarthy exhibited deliberate indifference to the safety and

26  corresponding Fourteenth Amendment rights of Victor, not to mention the residents

27  of the complex.  *Lewis,* 523 U.S. 833.  Accordingly, a reasonable jury could find

28  that such deliberate indifference caused deprivation of Victor's life without Due

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

13

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1   Process. *See Anderson,* 477 U.S. at 248.

2       At the conclusion of the foot chase, there is no dispute that Officer McCarthy

3   attempted to arrest Victor. (Ex. C, pp. 93-94, Ex. Z, 44:10-25, 94:13-16, 44:10-25,

4   53:4-11and 54:20-55:2 and 108:1-11.) But after that arrest attempt, Officer

5   McCarthy *admits* that he reholstered his TASER, let go of Victor, who was already

6   prone on the ground and partially cuffed, pulled out his gun, and shot an unarmed

7   suspect without warning. (Ex. C, pp. 94-99.) Plaintiffs present evidence of

8   Victor's last words threatening to sue and the inferior position that Victor was in

9   when he was shot. (Ex. H and Exhibits 1 and 2 thereto; Ex. I, p. 407, Ex. TT, p.

10   23.) A reasonable jury could consider this evidence, as well as that cited above in

11   Sections (A)(1)-(2), and conclude that Officer McCarthy had a purpose to harm

12   Victor "without regard to legitimate law enforcement objectives." *See Porter*, 546

13   F.3d at 1133. Note the fact pattern the Ninth Circuit contemplated in *Porter*:

14           We agree with Judge McKee's concurring opinion in
    Davis, a Third Circuit police chase case, which reasons

15           that where force against a suspect is meant only to "teach
    him a lesson" or to "get even" then "Lewis would not

16           shield the officers from liability even though they were
    ultimately effectuating an arrest[]" . . . Lewis

17           contemplates such "rare situations where the nature of an
    officer's deliberate physical contact is such that a

18           reasonable factfinder would conclude the officer intended
    to harm, terrorize or kill."

19

20   *Id.*, 546 F.3d at 1140-41 (9th Cir. 2008) (quoting *Davis v. Township of Hillside*, 190

21   F.3d 167, 174 (3d Cir. 1999)). Plaintiffs' evidence is such that there is at least a

22   genuine question for the jury as to whether this is one of those "rare situations." *Id.*

23   Accordingly, summary judgment must be denied on this ground. *See* Fed. R. Civ.

24   P. 56(c).

25   / / /

26   / / /

27   / / /

28   / / /

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

14

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

### 4. Genuine Issues of Material Fact Exist as to Whether Victor's Fourth and Fourteenth Amendment Rights Were Clearly Established at the Time of the Shooting.

Police officers are immune from liability for civil damages if their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known. *Harlow,* 457 U.S. at 818. To determine whether a right was clearly established, the Court will evaluate the specific context of the case. *Saucier,* 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne,* 526 U.S. 603, 615 (1999)).

Defendants present only the following factual analysis in support of their contention that Victor's Fourth Amendment rights were not clearly established:

> During his altercation with Ortega, Officer McCarthy was in fear for his life. San Diego Police Department policy clearly provides for the use of deadly force in these situations. In addition, the case law as outlined above would cause any reasonable police officers to believe the use of deadly force was necessary when the actions of [Mr.] Ortega placed Officer McCarthy's life in immediate danger.

(Defs.' Mot. 18:15-20 (citations omitted).)

As discussed in the foregoing section, Plaintiffs present expert reports as well as witness testimony to establish a genuine dispute as to both of these facts. Drawing all justifiable inferences from Plaintiffs' evidence, Officer McCarthy did not reasonably fear for his life, and he was not in immediate danger at the time of the killing. *See Anderson,* 477 U.S. at 248,

As fully discussed in Sections (A)(1)-(3), above, according to Plaintiffs' evidence, at the time of the shooting, Victor was in a submissive position on the ground, and Officer McCarthy was at least three to four feet away in a superior position. Victor was too far away to have been within reach of Officer McCarthy's primary weapon. No violent confrontation took place just prior to the shooting -

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

15

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1     the only sound was of Officer McCarthy's footsteps.

2        Plaintiffs' evidence is sufficient to support a reasonable jury's finding that

3 Officer McCarthy shot an unarmed, submissive suspect while his own life was not

4 in any danger. Under the justifiable inferences drawn from Plaintiffs' evidence, it

5 would have been clear to a reasonable officer that this was unlawful conduct under

6 the Fourth and Fourteenth Amendments. *See Saucier*, 533 U.S. at 201; *Anderson*,

7 477 U.S. at 248. Accordingly, a genuine dispute of material fact exists as to

8 whether Officer McCarthy violated Victor's clearly established rights, and

9 summary judgment is inappropriate on that ground. *See* Fed. R. Civ. P. 56(c).

10
11
12

> **5.     Genuine Disputes of Material Fact Remain as to whether the SDPD's Failure to Coherently Enforce its Policies Regarding Secondary Weapon Holsters Resulted in Victor's Death.**

13        Defendants move for summary judgment on Plaintiffs' section 1983 cause of

14 action against the City on the ground that there is no evidence of an

15 unconstitutional policy on the part of the SDPD. In addition, Defendants argue that

16 SDPD is not a proper defendant to the section 1983 cause of action. Plaintiffs will

17 voluntarily dismiss the section 1983 action - *against the SDPD only.*

18
19
20
21

> To impose municipal liability under § 1983 for a violation of constitutional rights plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and, (4) that the policy is the 'moving force behind the constitutional violation.'"

22 *Plumeau v. School Dist. # 40*, 130 F.3d 432, 438 (9th Cir. 1997) (quoting *Oviatt By*

23 *and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). The Ninth

24 Circuit provides three alternate paths by which a Plaintiff may establish the liability

25 of a municipality under section 1983.

26
27
28

> A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) the tortfeasor was an official

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

16

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

> whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002).)

In *Monell*, the Supreme Court held that municipalities can be liable for violation of section 1983 if the source of the alleged constitutional violation was official policy. *See* 436 U.S. at 658. Municipality section 1983 liability may stem from governmental custom that has not received "formal approval through official decision-making channels." *See id.* at 691.

The first inquiry in ascertaining municipal liability under section 1983 is determining whether there is a direct causal link between a policy or custom and the Constitutional violation. *City of Canton v. Harris* 489 U.S. 378, 385 (1988). To prove deliberate indifference, a plaintiff must show that the municipality had actual or constructive knowledge that its omission would likely result in a Constitutional violation. *Gibson v. County of Washoe*, 290 F.3d at 1175, 1186 (9th Cir. 2002).

Plaintiffs allege that "[m]aintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling the intentional conduct of MCCARTHY" was an official custom and policy of the SDPD, and that this policy resulted in the death of Victor. (FAC ¶ 25(d).)[7]

---

[7] There are other bases to find liability for Constitutional violations, which are alleged in the First Amended Complaint. SDPD failed to adequately train its officers, including Officer McCarthy. (Ex. D, 14:21-15:8; Ex. SS, 11:18-12:1 and 30:24-31:17.) Plaintiffs requested AOT records for *all* SDPD officers during the time period June 4, 2007 through June 4, 2012, but as of the filing of this opposition, Defendants have failed to produce them. (Ex. XX.) Due to SDPD's failure to respond to Plaintiffs' request for documentation, it is unknown at this time whether the lack of training was a department-wide epidemic at the time of the shooting. In addition, SDPD ratified the Constitutional violations by failing to properly investigate, trying to cover up the shooting and failing to conduct a walk-through with Officer McCarthy - standard operating procedure in all officer involved shootings. (Omega Dec.; Ex. D, 93:1-95:13; Ex. L; Ex. M; Ex. N, 13:19-14:19, 15:8-14, 31:5-32:7; Ex. AA; Ex. BB; Ex. EE, pp. 2, 11 and 12; Ex. FF, pp. 2-3; Ex. GG; Ex. HH; Ex. LL, 13:15-14:12; Ex. MM, p. 2; Ex. NN, 66:20-67:7; Ex. YY, 30:4-14 and 31:19-22; Ex. 22.)

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

17

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1   Specifically, as discussed below, substantial evidence establishes that SDPD failed

2   to inspect the unsanctioned, unlatched, elastic ankle holster that Officer McCarthy

3   used to carry his secondary firearm while on duty. SDPD's standard operating

4   procedure of not inspecting secondary weapon holsters directly enabled Officer

5   McCarthy to wear an unsanctioned holster. *See Price,* 513 F.3d at 966. Officer

6   McCarthy essentially admits that his inadequate holster caused the deprivation of

7   Victor's Fourteenth Amendment right to life when he admitted in his interview that

8   he switched to deadly force only when his secondary weapon came loose. (Ex. C,

9   p. 98.) *See Plumeau,* 130 F.3d at 438. Plaintiffs' evidence, if true, establishes a

10  municipal policy that evinced deliberate indifference to the safety of officers and

11  members of the public alike.[8] *See id.*

12      Officer McCarthy admits both: (1) that *Victor was simply trying to get away*;

13  and (2) that Officer McCarthy *only* felt threatened when his own secondary,

14  unofficial revolver came loose. (Ex. C, pp. 98-99; Ex. D, 87:23-88:11.) Officer

15  McCarthy's backup holster was a Renegade Cozy Partner 50. (Ex. CC.) The

16  holster was not adequately equipped to retain a secondary weapon. Plaintiffs'

17

18  [8] Curiously, Defendants' motion does not address the crux of the case – the inadequacy of the

19  secondary weapon holster, SDPD's failure to inspect holsters, the lack of understanding among
SDPD personnel regarding inspection roles, and whether the subject holster was ever SDPD-

20  approved. Extensive discovery has been conducted on these issues, including without limit:
Plaintiffs' counsel's pre-litigation letter to SDPD requesting Defendants' preserve Officer

21  McCarthy's secondary weapon holster, October 5 2012; Plaintiffs' Requests for Production, Set
One, May 17 2013, Number 31; Requests for Production, Set Two, December 30 2013, Numbers

22  43, 44, 45, 46, 47, 48, 50, 56, 58 and 59; Deposition of Sergeant Alan Karsh, January 31, 2014;
Deposition of Officer McCarthy, February 11, 2014; Deposition of Sergeant Randall Eichmann,

23  November 17, 2013; Deposition of Sergeant Shawn Takeuchi, February 10, 2014; Deposition of
Sergeant Joe Howie, February 10, 2014; Deposition of Sergeant Ron Philhower, February 4,

24  2014; Deposition of Defendants' Expert Luke Haag, March 14, 2014; Deposition of Defendants'
Expert Elmer Pellegrino, March 27, 2014; Deposition of Plaintiffs' Expert Brent Turvey, Ph.D.,

25  March 26, 2014; Deposition of Plaintiffs' Expert Roger Clark, March 24, 2014; Rule 26 Report,
Defendants' Expert Luke Haag, March 1, 2014; Supplemental Rule 26 Report, Defendants'

26  Expert Luke Haag, March 27, 2014; Rule 26 Report; Plaintiffs' Expert Roger Clark, March 18,
2014; Supplemental Rule 26 Reports, Plaintiffs' Expert Roger Clark, April 25, 2014; Rule 26

27  Report; Plaintiffs' Expert Brent Turvey, Ph.D., March 13, 2014; Supplemental Rule 26 Report;

28  Plaintiffs' Expert Brent Turvey, Ph.D., April 24, 2014. (Denning Dec., ¶ 62.)

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

18

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  police procedures expert, Mr. Clark, refused to even call it a holster, describing it as

2  a "*pouch*," in which a firearm would be "*totally free and subject to the forces of*

3  *gravity*." (Ex. CC; Ex. OO; 76:6-15; Ex. EE, p. 11 (stating that the holster was

4  "*little more than a bandage*").) Dr. Turvey examined the exact model holster. He

5  similarly noted that the holster was cheaply manufactured, worn out, and that it did

6  not have a safety clasp or catch to retain the firearm; in short, a firearm held within

7  it would be likely to fall out. (Ex. H and Exhibit 2 thereto, p. 2.)

8  Sergeant Karsh, who supervised a *squad* of patrol officers, was required to

9  inspect holsters, among other things, on a quarterly basis - "*for condition and*

10 *retention abilities*." (Ex. G, 18:10-15; Ex. PP, pp. 6-7.)  When asked whether he

11 ever conducted such inspections, Sergeant Karsh testified that he never inspected

12 *any* of his patrol officers' holsters for their ability to retain a weapon. (Ex. G, 94:7

13 - 95:1.)  In addition, even though the written SDPD Inspections Guide ("Inspections

14 Guide") requires inspections of back-up guns, Sergeant Karsh incorrectly stated that

15 the Inspection Guide *only applied to primary weapon holsters*.[9]  (*Id.* at p. 3; Ex. G,

16 106:4-107:17.)

17 Sergeant Karsh thought it was Sergeant Randall Eichmann's job to inspect

18 secondary weapon holsters. (Ex. G, 96:15-25, 94:25-95:1 and 95:5-7.)  However,

19 Sergeant Eichmann, the Range Master, corroborated SDPD policy in stating that it

20 was Sergeant Karsh's job to inspect the holsters; he further testified that Sergeant

21 Karsh's supervising lieutenant needed to ensure that Sergeant Karsh conducted his

22

23 [9] Sergeant Karsh admitted that he did not perform inspections of any non-department issued
24 equipment. (Ex. G, 101:3-6)  Notably, officers' primary weapon holsters are not even
department-issued. (Ex. D, 70:19-21.)  Exhibit 21 to Sergeant Karsh's deposition includes a
25 screenshot of the program SDPD uses to conduct inspections. (Ex. G, 93:20-96:25, including
Exhibit 21.)  SDPD's internal computer program confirms that non-department issued equipment,
26 i.e., holsters, was supposed to be inspected per policy. (Ex. G, 93:20-96:25 including Exhibit 21.)
Exhibit 22 to Sergeant Karsh's deposition includes a printout, purporting to confirm inspections
27 of Officer McCarthy's equipment over three years, even though Sergeant Karsh *admitted* he did
not inspect Officer McCarthy's holsters. (Exhibit 22 to Ex. G.)
28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

19

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1   inspections, and that the captain needed to supervise that lieutenant. (Ex. DD,

2   47:15-48:2; Ex. PP, p. 3.) Because patrol officers' holsters were not getting

3   inspected, neither Sergeant Karsh, nor his supervising lieutenant, nor the

4   supervising captain, implemented the written SDPD inspection policy. (*Id.*) There

5   is no evidence that any SDPD personnel were ever disciplined for failing to follow

6   policy regarding holster inspections, or for allowing officers to wear non-approved

7   holsters. (Denning Dec., ¶ 7.)

8        Sergeant Karsh, whose responsibility it was to inspect ankle holsters, testified

9   that he "thought" there was a list of SDPD-approved holsters for secondary

10  weapons. (Ex. G, 104:20-23 and 105:21-25.) By contrast, Sergeant Eichmann

11  testified that, even though it is important for a secondary weapon to stay in its

12  holster, there were no SDPD standards for secondary weapon holsters, nor was

13  there a list of SDPD- approved secondary weapons holsters. (Ex. DD, 13:25-14:5,

14  16:6-14, 35:15-17, 66:9-16 and 68:11-19.) But at the time of the incident, Officer

15  McCarthy believed his secondary weapon holster was SDPD-approved. (Ex. D,

16  66:9-16.)

17       Mr. Clark testified that there must be a professional standard for holsters; he

18  concluded that SDPD deliberately ignored the necessity for retention standards and

19  that if the policy is not changed, the public continues to be at great risk for similar

20  deaths. (Ex. OO, 76:18-22, 77:7-12, 77:19-24.) He found that Officer McCarthy

21  obviously, deliberately and recklessly carried his secondary weapon in an

22  unsecured, unsafe manner contrary to written SDPD policy and POST training; he

23  further found that SDPD failed to follow or ignored its own policy to inspect the

24  holster. (Ex. EE, pp. 10-11.) Mr. Clark testified that SDPD's failure to implement

25  department-wide policies for holster retention and holster inspections amounts to a

26  deliberate indifference to policy. (Ex. FF, p. 4.)

27       SDPD personnel, with key roles in regulating the type of holsters allowed

28  and the inspections of such holsters, cannot even agree on whether there was a list

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

20

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  of department-approved holsters for secondary weapons. (Ex. G, 104:20-23 and

2  105:21-25; Ex. DD, 13:25-14:5, 16:6-14, 35:15-17, 66:9-16 and 68:11-19.)  They

3  also cannot agree on who was responsible for inspecting holsters for retention

4  ability, as required by written SDPD policy. (Ex. G, 96:15-25, 94:25-95:1 and

5  95:5-7; Ex. DD, 47:15-48:2; Ex. PP, p. 3.)

6       Here, a genuine issue of material fact exists as to whether SDPD's failure to

7  implement a policy on the use of safe and effective secondary weapon holsters and

8  SDPD's failure to inspect secondary weapon holsters as required by written policy,

9  resulted in the deprivation of Victor's rights.  Making all justifiable inferences in

10  Plaintiffs' favor, as the Court must in determining whether Defendants are entitled

11  to summary judgment, *Anderson*, 477 U.S. at 248, the failure to implement

12  standards for holsters and follow the written inspection policy was a result of acts

13  and omissions reaching from Officer McCarthy's direct supervisor all the way to

14  the SDPD captain. (Ex. DD, 47:15-48:2; Ex. PP, p. 3.)  This department-wide

15  failure to follow written inspection policy in effect became SDPD policy, and it

16  escalated the routine arrest of an unarmed suspect into a Constitutionally violative

17  homicide. *See Monell,* 436 U.S. at 690-91.

18       The SDPD understood that an omission in enforcing the policy would likely

19  result in a Constitutional violation.  The SDPD had implemented a computer

20  system for the purpose of monitoring the quarterly inspection of holsters.  Ex. G,

21  93:20-96:25, including Exhibit 21;  Exhibit 22 to Ex. G.)  Though the inspection

22  system ultimately was insufficient in practice, this demonstrates that the SDPD

23  understood the importance of ensuring holsters had sufficient retention ability.  Yet

24  SDPD personnel, *at all levels*, failed to ensure that primary and secondary weapon

25  holsters were inspected for adequate retention levels and were in conformance with

26  SDPD standards. (See Ex. PP, p. 3.)  These failures amount to a "deliberate

27  indifference" to the constitutional rights of Victor. *Plumeau,* 130 F.3d at 438.

28  / / /

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

21

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

**B.     Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiffs' Second and Third Causes of Action for Violation of California Civil Rights Acts.**

### 1.     California Civil Code § 51.7

The Ralph Civil Rights Act protects Victor's right to be free from violence, intimidation or threat of violence committed against him because he was Hispanic. Cal. Civ. Code § 51.7. Victor's cause of action may be maintained by his successor in a survivorship action. *Gabales v. County of San Joaquin,* 2009 WL 2924037 at *15 (E.D.Cal. 2009). In this case, when Officer McCarthy chased Victor, SDPD had information that Victor was Hispanic. (Ex. B, 3:3-6.) Plaintiffs agree that in order to state a claim for section 51.7, there must be evidence to support a reasonable inference that race was a motivating factor. *Austin B. v. Escondido Union Sch. Dist.,* 149 Cal.App.4th 860, 880-881 (2007). As fully set forth in the concurrently filed Amended Rule 56(d) Declaration of Christina Denning, the parties have an unresolved discovery dispute regarding Plaintiffs' entitlement to know whether Officer McCarthy harbored a bias against persons with Hispanic descent. Accordingly, the pending motion for adjudication of this claim should be denied or continued. Fed. R. Civ. P. 56(d) and Rule 56(d) Dec.

### 2.     California Civil Code § 52.1

The elements of claims under section 52.1 are evaluated under the reasonableness standard of the Fourth Amendment. *Jones v. Kmart Corp.,* 17 Cal.4th 329, 331 (1998). Victor's cause of action may be maintained by his successor in a survivorship action. *Dela Torre v. City of Salinas*, 2010 WL 3743762 at *6. Further, under California law, a governmental entity can be held vicariously liable under California Civil Code section 52.1 when a police officer acting in the course and scope of employment uses excessive force. *Bernat v. Cal. City Police Department,* 2011 WL 1103130 at *7.

/ / /

-IIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

22

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1       Defendants cite to *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947,

2  959 (2012), for the proposition that Plaintiffs cannot show intimidation, threat or

3  coercion, as contemplated by the statute.  In *Shoyoye,* plaintiff prevailed on his

4  section 52.1 claim after he was *mistakenly* detained in jail for 16 extra days due to a

5  clerical error.  Defendant appealed the judgment and post-trial motions.  The Court

6  of Appeal found that the County's clerical error did not rise to the level of

7  intimidation, threats or coercion required for section 52.1 liability.

8       Here, sufficient evidence exists to maintain a cause of action for violation of

9  section 52.1.  Victor was not killed by a clerical error.  Officer McCarthy wanted to

10  catch the bad guy at all costs.  He tripped Victor, put him in a bear hug and then

11  fatally shot him just after Victor yelled - "*Get off me*" - "*Are you kidding me*?" -

12  "*I'm gonna sue you!*"  (See e.g., Ex. P, pp. 311-312; Ex. Q, 50:12-14; Ex. R, p. 316;

13  Ex. T, p. 236, Ex. U, ¶ 2; Ex. Z, 94:13-16.)  Officer McCarthy was overaggressive,

14  threatening and intimidating in his handling of the situation when more reasonable

15  alternatives were available (1,000 of them - according to Sergeant Howie).  (Naomi

16  Dec., ¶ 5.)  Because substantial evidence of coercion, threats and intimidation exists

17  to support this claim, Defendants' motion should be denied.

18       **C.**    **Genuine Disputes of Material Fact Preclude Summary Judgment**

19            **on Plaintiffs' Fourth Cause of Action for Assault and Battery.**

20       Claims for assault and battery against peace officers are resolved under the

21  reasonableness standard set forth in *Graham.  Saman v. Robbins,* 173 F.3d 1150,

22  1157 (9th Cir. 1999); *Edson v. City of Anaheim,* 63 Cal.App.4th 1269, 1273

23  (Cal.Ct.App.1998).  As fully set forth in Sections A, above, genuine disputes of

24  material fact exist as to the cause of action for assault and battery.

25       **D.**    **Genuine Disputes of Material Fact Preclude Summary Judgment**

26            **on Plaintiffs' Fifth Cause of Action for Wrongful Death.**

27       Government Code section 820.2 does not apply to the facts of this case

28  because, as demonstrated above in Section A, the force used by Officer McCarthy

·IGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

23

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  was excessive and unreasonable under the circumstances. *See Gray v. DeMarco,*
2  1999 WL 390848 (N.D. Cal. June 9, 1999).

3       **E.    Genuine Disputes of Material Fact Preclude Summary**
4              **Judgment on Plaintiffs' Sixth Cause of Action for Negligence.**

5       Under California law, liability can arise if tactical conduct and decisions
6  leading up to the use of deadly force show, as part of the totality of the
7  circumstances, that the use of deadly force was unreasonable. *Hayes v. County of*
8  *San Diego,* 57 Cal.4th 622 (9th Cir. 2013).  Because [the excessive force inquiry]
9  nearly always requires a jury to sift through disputed factual contentions, and to
10  draw inferences therefrom, summary judgment or judgment as a matter of law in
11  excessive force cases should be granted sparingly. *Santos v. Gates,* 287 F.3d 846,
12  853 (9th Cir. 2002).  This is because such cases almost always turn on a jury's
13  credibility determinations. *Smith v. City of Hemet,* 394 F.3d 689, 701 (2005).

14       Where summary judgment is denied for section 1983 excessive force claims,
15  denial of summary judgment on related State law claims for assault, battery and
16  negligence is also appropriate. *Gomez v. City of Fremont,* 730 F.Supp.2d 1056,
17  1067 (N.D. Cal. 2010).  The reasonableness inquiry under the Fourth Amendment
18  does not differ essentially from a determination of negligence. *See Bernat v. Cal.*
19  *City Police Department,* 2011 WL 1103130, at *8 (E.D. Cal. March 21, 2011);
20  *Bulkley v. Klein*, 206 Cal.App.2d 742, 751 (Cal.App. 4th Dist. 1962).  Even where
21  defendants have been found to be entitled to qualified immunity in a section 1983
22  claim, under California law, immunity is not extended to officers who use excessive
23  force in arresting a suspect. *Garcia v. City of Imperial,* 2010 WL 3834020, at *14
24  (S.D. Cal. 2010).

25       An officer's duty to act reasonably extends to *pre-shooting conduct*, which
26  should not be considered in isolation. *Hayes v. County of San Diego,* 57 Cal.4th
27  622, 629-630 (2013). "Law enforcement personnel's tactical conduct and decisions
28  preceding the use of deadly force are relevant considerations under California law

·IIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

24

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  in determining whether the use of deadly force gives rise to negligence liability.

2  Such liability can arise, for example, if the tactical conduct and decisions show, as

3  part of the totality of circumstance that the use of deadly force was reasonable." *Id.*

4      California law requires this Court to look at *all* of the pre-shooting conduct,

5  including the many poor tactical decisions made by Officer McCarthy leading up to

6  the use of deadly force. As fully discussed in Section A, above, Plaintiffs' evidence

7  establishes a genuine dispute of material fact as to whether Officer McCarthy made

8  numerous tactical errors sufficient to warrant a finding that he was negligent.

9      **F.    The City May Pay Punitive Damages**

10      Although it is not required, the City can choose to pay punitive damages that

11  have been assessed against Officer McCarthy. CAL GOV'T CODE § 825(b).

12                          **IV.**

13                      **CONCLUSION**

14      Genuine disputes of material fact remain as to all of Plaintiffs' causes of

15  action. Accordingly, Defendants' motion for summary judgment and/or partial

16  summary judgment must be denied. *See* Fed. R. Civ. P. 56(c).

17  DATED: June 6, 2014            HIGGS FLETCHER & MACK LLP

18

19                                By: *s/ CHRISTINA M. DENNING*

20                                PAUL J. PFINGST, ESQ.
                                  CHRISTINA M. DENNING, ESQ.

21                                Attorneys for Plaintiffs SHAKINA
                                  ORTEGA, individually, and as

22                                successor of interest of VICTOR
                                  ORTEGA, deceased; TAMIA

23                                ORTEGA, a minor, by and through
                                  her guardian Shakina Ortega; and

24                                JACOB ORTEGA, a minor, by and
                                  through his guardian Shakina Ortega

25

26

27  1193888.4

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

25

Case No. 13-CV-87-LAB (JMA)
PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE PARTIAL SUMMARY JUDGMENT