JAN I. GOLDSMITH, City Attorney
DANIEL F. BAMBERG, Assistant City Attorney
BRIAN K. CLINE, Deputy City Attorney
California State Bar No. 246747
　　　Office of the City Attorney
　　　1200 Third Avenue, Suite 1100
　　　San Diego, California 92101-4100
　　　Telephone:  (619) 533-5800
　　　Facsimile:  (619) 533-5856

Attorneys for Defendants,
San Diego Police Department, Jonathan McCarthy, City of San Diego

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKINA ORTEGA, individually, and as successor of interest of VICTOR ORTEGA, deceased; TAMIA ORTEGA, a minor, by and through her guardian Shakina Ortega; and JACOB ORTEGA, a minor, by and through his guardian Shakina Ortega,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>SAN DIEGO POLICE DEPARTMENT, a public entity; JONATHAN MCCARTHY an individual; CITY OF SAN DIEGO, a public entity; and DOES 1 through 10,<br><br>　　　　　　Defendants. | Case No. 13cv0087 BAS (JMA)<br><br>**DEFENDANTS' REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　TBD<br>Time:　　TBD<br>Judge:　 Hon. Cynthia Bashant<br>Ctrm:　　4B – 4th Floor |

791477

I. **The Majority of Plaintiffs' Exhibits are Inadmissible Because of Inadequate Authentication and Hearsay.**

Evidence used to support or oppose a motion for summary judgment must be admissible evidence. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed.R.Civ.P. 56…" *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Therefore exhibits B, C, E, F, H, I, K-N, P, R, T, V, AA-CC, EE-II, PP, TT, VV-XX, ZZ are inadmissible due to inadequate authentication or hearsay.[1]

   A. **Authentication is a condition precedent to the admissibility of evidence.**

Exhibits to the declaration of Christina Denning (C, E, F, H, I, K, L, M, N, P, R, T, V, AA, BB, CC, EE, FF, GG, HH, II, PP, TT, VV, WW, XX, ZZ) have not been properly authenticated and lack foundation. (Defs.' Obj. to Evid.)

Federal Rules of Civil Procedure 56(e) requires that affidavits submitted in support of a motion for summary judgment must be made on personal knowledge of the affiant who is competent to testify to the matters therein, must state facts that would be admissible in evidence, and a sworn or certified copy of the document must be attached to the affidavit. *Boyd v. City of Oakland*, 458 F.Supp.2d 1015, 1023 (N.D. Cal.2006). Rule 56(e) requires the affiant must be a person through whom the exhibits could be admitted into evidence, i.e., a witness who wrote it, signed it, or saw others do so. *Orr*, 285 F.3d 764, 773-774 and 774 fn. 8-9. Even though some of Plaintiffs' exhibits were acquired in discovery, "an exhibit…is not authenticated by having been produced in discovery." *Id.*, at 777.

In this case, Plaintiffs' counsel filed a declaration purporting to self authenticate all exhibits obtained in discovery by stating each is a "true and correct copy." Merely stating documents were obtained in discovery is not sufficient to authenticate the documents. Ms. Denning is not the witness who wrote it, signed it,

---
[1] See concurrently filed Objections to Evidence.

or saw others do so. Ms. Denning has no personal knowledge and is not competent to testify to the substance of the documents. As stated in *Orr*, "an exhibit…is not authenticated by having been produced in discovery." *Id.*, at 777

### B. Inadmissible hearsay.

Assuming the exhibits to Plaintiffs' opposition are accepted as authentic, their content (and the content of other exhibits) is inadmissible hearsay. The documents are reports and statements made by third parties. The statements are hearsay and inadmissible. *Orr*, 285 F.3d at 778.

#### i. Exhibits B, F, K, & M.

The titled exhibits are transcripts of various audio recordings, i.e., 9-1-1 telephone calls, interviews by various police officers of parties and witnesses. Multiple exhibits contain plaintiff Shakina Ortega's out of court statements. The remaining exhibits are interviews of San Diego Police Department personnel which contain officers' statements interpreting and repeating statements made by third persons; double hearsay.

#### ii. Exhibits C, I, N, P, R, T, V, GG, HH, II, PP, TT, VV, WW, & ZZ.

Statements made by third parties, under no business duty to report, are hearsay even when included in police reports. Police reports resulting from the officer's own observations and knowledge may be admitted, but the statements made by third persons may not. *United States of America v. James J. Pazsint*, 703 F.2d 420, 424-425.

The titled exhibits are reports or parts of reports, which contain statements made by third persons. The statements in these exhibits are not verbatim, but paraphrased by the San Diego Police Department officer; double hearsay.

#### iii. Exhibits H, sub exhibit 1 and 2, EE, & FF.

Attached as exhibits 1 and 2 to exhibit H, is Dr. Turvey's Rule 26 report and supplemental report. Exhibits EE and FF are the Rule 26 report and supplement of Plaintiffs' retained expert witness Roger Clark. The reports are hearsay.

### iv. Exhibits AA, BB & XX.

These exhibits are correspondence back and forth between counsel. Among other reasons, these exhibits are clearly inadmissible as hearsay.

### v. Exhibit 2 to the Declaration of Naomi Campbell

Attached as exhibit 2 to the declaration of Naomi Campbell are the handwritten notes of Naomi Campbell. The handwritten notes purport to be statements by Sgt. Howie to Naomi Campbell. Sgt. Howie allegedly tells Naomi Campbell what Officer McCarthy told Sgt. Howie about the incident; again double hearsay.

## II. Plaintiffs Have Not Plead a Constitutional Violation Against Officer McCarthy or the City.

### A. Plaintiffs' misrepresentation of fact.

Throughout Plaintiffs' opposition there are quotes and references to evidence which distort fact. Plaintiffs' offer confuses conclusion of counsel and fact evidence.[2] Plaintiffs' counsel draws conclusions from false facts and speculation, and then presents those conclusions as material fact. Defendants address the more egregious misrepresentations.

- *Ortega's DNA was not on the gun*: **Factually not true**. A primary source of DNA was identified as being on the weapon, presumably Officer McCarthy's. Ortega was excluded as the primary source. There were two or more other DNA sources on the back-up weapon, but not enough DNA was available for analysis. The official report states, Ortega could not be excluded or included as a source of the secondary DNA. (Decl. Cornacchia, ¶¶1-6; Ex. A)

- *Officer McCarthy panicked because his back-up gun fell out*: **Factually not true**. The record does not support Plaintiffs' counsel's conclusion. Officer McCarthy said he feared for his life because Ortega tried to take his back-up weapon (twice) and then his primary weapon. Plaintiffs present no evidence Officer McCarthy panicked solely because his back-up weapon was loose. (Decl. Cline, ¶2; Ex. A, p. 41: 2-p. 43: 23, 92: 17-25)

---

[2] Defendants don't assign intent. The fact record is voluminous. Inattention could lead to mistake.

- *Ortega's last words were "Are you kidding me?  I'm gonna sue you!"*: Plaintiffs' counsel misrepresents the Owens' brothers deposition testimony. According to the Phillip Owen, Officer McCarthy commanded Ortega to get on the ground; Ortega angrily said "Come on.  Get the fuck off of me. I'm going to sue you. I'm going to sue you." (Decl. Cline, ¶3; Ex. B, p. 43: 6-24, p. 47: 11-22)

- *Ortega was submissive*:  Plaintiffs' counsel **concludes** Ortega was "submissive."  Plaintiffs concede Ortega would have been bent at the waist and flexed forward at the time of the first shot. The fact that witnesses heard footsteps prior to the shooting is irrelevant and not inconsistent with Officer McCarthy's testimony. The Owens brothers did not see the fight, or the shooting, and were unable to determine whose footsteps they heard. This is not inconsistent with two men rising from the ground; one man from a kneeling position, the other from all fours lunging forward.  In either scenario, the sound of footsteps would have been heard, either from Officer McCarthy's feet as he was getting up, and/or Ortega's feet as he was getting up.  Plaintiffs present no evidence inconsistent with Officer McCarthy's testimony. (Pls.' Opp'n, p. 11: 11-13, 19-20) (Decl. Cline, ¶¶2-4; Ex.s A, p. 44: 5-p. 45: 24, B, p. 47: 3-13, p. 48-49: 23, p. 53: 2-6, C, pp. 27-29, 42-48) [ECF no.'s 49-3, 49-4]

- *Officers did not stop and investigate*:  **Factually not true**.  Upon arrival at the scene Officer Maynard spoke with Ms. Ortega.  Ms. Ortega told Officer Maynard, Ortega fled the scene and she pointed in the direction Ortega ran. (Decl. Cline, ¶5; Ex. D, p. 15: 2-21, p. 26: 23-25, p. 28: 8-p. 29: 13)

- *Sgt. Howie said there were a thousand different ways to handle the situation instead of killing Victor*: **Plaintiffs' counsel added the phrase** "*instead of killing Victor*," to the double-hearsay statement Naomi Campbell attributed to Sgt. Howie. (Decl. Cline, ¶¶2, 6; Ex.s A, p. 92: 17-25, E, p. 49: 4-p. 53: 9) (Decl. N. Campbell, ¶4; Ex. 2, p.2. ¶5, p. 3: 4)

- *Officer McCarthy changed his testimony regarding the back-up gun*:  Officer McCarthy never changed his testimony regarding the back-up weapon.  Sgt. Karsh incorrectly assumed Ortega grabbed the gun.  Sgt. Karsh testified Officer McCarthy said there was a struggle over a gun.  Sgt. Karsh interpreted this to mean Ortega grabbed the gun. (Decl. Cline, ¶¶2, 7; Ex.s A, p. 54: 15-17, F, p. 42: 3-12, p. 53: 15-25, p. 87: 5-22)

- *Officer McCarthy's back-up weapon's holster was flimsy and unsanctioned*: Neither of these statements is true.  The back-up weapon is a level one retention

holster and designed to withstand 4-6 lbs of force. The holster Officer McCarthy was wearing is allowed by the San Diego Police Department. (Decl. Cline, ¶¶8-9; Ex.s G, p. 45: 22-p. 46: 16, H, p. 56: 8-p. 57) (Decl. Sharki, ¶¶1-4)

- *Officer McCarthy had his TASER in his hand just prior to the shooting*: Officer McCarthy put his TASER away because he believed he could get both of Ortega's hands in hand cuffs without using the TASER. Ortega went for the gun after Officer McCarthy holstered his TASER. (Decl. Cline, ¶2; Ex. A, p. 38: 1-p. 40: 11)

### B.  Under the circumstances Officer McCarthy's conduct was reasonable and did not violate any clearly established right.

Plaintiffs' opposition ignores Plaintiffs' failure to separately plead a cause of action with respect to defendant Officer McCarthy. The First Amended Complaint ("FAC") alleges only one cause of action pursuant 42 U.S. § 1983, a *Monell* claim against defendant City. Defendants consider the issue unopposed and respectfully request the Court grant Defendants' motion with respect Officer McCarthy.

Moreover, Officer McCarthy did not violate: (1) Ortega's Fourth Amendment rights; and (2) Officer McCarthy's conduct did not violate any Fourth Amendment rule that was clearly established.

### i.  Officer McCarthy's actions were reasonable.

In considering the first and third factors, it is undisputed Ortega was suspected of a serious crime, i.e., domestic violence with injury/battery on a police officer.[3,4] Plaintiffs concede Officer McCarthy had probable cause to detain Ortega.[5] Plaintiffs concede Ortega was "actively resisting arrest or attempting to evade arrest. *Id.*, at 396. (Pls.' Opp'n, p. 11: 3-4) It is irrelevant Ms. Ortega changed her story about the domestic violence subsequent to filing the suit. What Officer

---

[3] The willful infliction of corporal injury of an intimate partner can be charged as a felony. (Penal Code 273.5)
[4] A willful and unlawful use of force against a uniformed peace officer engaged in the performance of his/her duties is chargeable as a felony. (Penal Code 243(c)(2))
[5] (Decl. Cline, ¶¶2, 10; Ex.s A, p. 30: 2-25, I, p. 13: 1-p. 15: 19)

McCarthy knew at the time, rather than 20/20 hindsight, is important. *Graham v. Connor*, 490 U.S. 386, 396-397.

The most important factor, and main issue, is whether Ortega posed an immediate threat to Officer McCarthy warranting deadly force, rather than less severe alternatives, i.e., a warning that deadly force would be used. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). Other than Plaintiffs' counsel's conclusions and speculation, Plaintiffs offer absolutely no evidence disputing Ortega was an immediate threat.

Ortega was fighting with Officer McCarthy. Ortega intended to take Officer McCarthy's guns during the course of the struggle. Plaintiffs offer no evidence to the contrary. It is clearly established, threatening an officer with a weapon justifies the use of deadly force. *Reynolds v. Cnty of San Diego*, 84 F.3d 1162, 1168 (9th Cir. 1996). Given the rapidly evolving struggle, Officer McCarthy need not wait until Ortega took the gun and fired before using deadly force.[6]

Plaintiffs' expert theorizes Officer McCarthy's gun was 3-4 ft. from Ortega. No witness opines 3-4 ft. is not close enough for Ortega to reach for McCarthy's gun. Plaintiffs present no witness that says Officer McCarthy's gun was greater than 3-4 ft. from Ortega. Taking into account arm length and a lunge forward, the average male can cover over 5 feet in a third of a second. Even at 3-4 ft., Ortega was an immediate threat. It is Plaintiffs' counsel's conclusion, that 3-4 ft. is a safe distance. It is Plaintiffs' counsel's conclusion that Ortega could not reach for McCarthy's gun at 3-4 ft. (Decl. Lewinski, ¶¶1-6)

*If feasible*, Officer McCarthy must give a warning. *Deorle v. Rutherford*, 272 F.3d 1272, 1284. The decision, and need, to use deadly force was a split-second decision.[6] Plaintiffs present no evidence that under these circumstances, it was feasible for Officer McCarthy to give a warning.

---

[6] (Decl. Cline, ¶¶2-4; Ex.s A, p. 32: 3-24, p. 40: 3-p. 48: 4, B, p. 47: 3-13, p. 48-49: 23, p. 53: 2-6, C, pp. 27-29, 42-48) [ECF no.'s 49-3, 49-4]

### ii. Officer McCarthy did not violate any clearly established right.

Qualified immunity protects Officer McCarthy and "all but the plainly incompetent or those who knowingly violate the law." *Aschroft v. al-Kidd*, 131 S.Ct. 2074 (2011). Officer McCarthy cannot be said to have violated a clearly established right unless that right was so definite that any reasonable officer in Officer McCarthy's shoes would have understood he has violated the right. *Id.*, at 2078.

Plaintiffs offer the following: (1) Plaintiffs' counsel concludes Ortega was submissive—there is absolutely no evidence Ortega was in a submissive position relative to Officer McCarthy; (2) Officer McCarthy was three to four feet away— even at three to four feet Plaintiffs present no evidence Ortega was not attempting to take Officer McCarthy's gun, nor does it establish a clearly defined constitutional right; (3) no violent confrontation took place just prior to the shooting—this is factually not true as all witnesses heard or saw the fight; and (4) the only sound prior to the shooting was Officer McCarthy's footsteps—this fact is irrelevant. The witnesses who heard the footsteps could not identify whose footsteps they heard. Nor is this fact inconsistent with Officer McCarthy's testimony that two men were getting up from the ground when the first shot was fired.[7] (Pls.' Opp'n, p. 15: 24-28, p. 16: 1) (Decl. Lewinski, ¶¶4-6)

Plaintiffs present no evidence or new case law which placed the constitutional question confronted by Officer McCarthy beyond debate. Even Plaintiffs concede, there were one thousand ways the situation could have been handled. (Decl. Cline ¶6; Ex. E, p. 49: 4-p. 53: 9) (Pls.' Opp'n, p. 9: 24, p. 10: 1)

### C.  Shakina, Tamia and Jacob's 14th Amendment claim.

Plaintiffs misapply the Fourteenth Amendment. The analysis is not whether Ortega's rights were violated, but whether plaintiffs, Shakina, Tamia, and Jacob's

---

[7] (Decl. Cline, ¶¶2-3; Ex.s A, 32: 3-24, p. 40: 3-p. 48: 4, p. 77: 18-20, p. 87: 2-p. 88: 11, B, p. 47: 3-13, p. 48-49: 23, p. 53: 2-6, C, pp. 27-29, 42-48) [ECF no.'s 49-3, 49-4]

substantive due process rights were violated. As stated in Defendants' moving papers, Plaintiffs' lone cause of action for violation of 42 U.S. section 1983 is a *Monell* claim against the City of San Diego. Plaintiffs do not oppose this fact. Therefore Defendants' motion with respect to plaintiffs Shakina, Tamia, and Jacob Ortega should be granted.

Assuming the Court determines the 14th A., cause of action was properly plead, *Porter* clearly establishes that rapidly evolving situations, as is the case here, require the "purpose to do harm" standard. Furthermore, alleged pre-shoot "Negligence by a defendant acting under color of state law is not sufficient to state a claim under section 1983." *Bustamante v. Roman*, 2008 WL 622021, citing *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986). Plaintiffs concede Ortega ran from Officer McCarthy. (Pls.' Opp'n, p. 11: 3-4) Ortega and Officer McCarthy were engaged in a violent struggle. All witnesses agree the struggle lasted seconds. The decision to use deadly force against Ortega was a snap judgment based on the unexpected act of Ortega grabbing for the back-up gun (twice) and trying to take Officer McCarthy's primary gun.[7] That being said, even under the "shocks the conscience" standard, Plaintiffs present no evidence Officer McCarthy was trying to "teach him a lesson," or "get even," or intended to "harm, terrorize or kill."

**D.   Plaintiffs offer no evidence to prove *Monell*.**

Defendants go about proving *Monell* by way of the San Diego Police Department's uniform policy with respect to back-up, or secondary, weapons. Plaintiffs' claim: (a) the San Diego Police Department lacks an official policy regarding back-up weapon holster retention levels; and/or (b) the San Diego Police Department fails to inspect officers' back-up weapon holsters.

The lack of policy or failure to adhere to policy, itself, must be a deprivation of a constitutional right. *Hayes*, 736 F.3d at 1230, 1232. Alleged pre-shoot negligence is irrelevant. *Daniels*, at 330-331. Here, the public has no recognized constitutionally protected right with respect to the San Diego Police Department's

uniform policy. The uniform policy with respect to back-up holsters is purely for the safety of the officer and not intended for the protection of third parties. Plaintiffs present no evidence of a recognized constitutionally protected right in uniform policies. (Decl. Sharki, ¶¶1-4)

Assuming Ortega has a constitutional right in the San Diego Police Department's uniform policy, Plaintiffs must present evidence of a longstanding or widespread practice or custom. "Liability for improper custom may not be predicated on *isolated* or *sporadic incidents*…" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) Plaintiffs claim Sgt. Karsh failed to inspect Officer McCarthy's secondary weapon holster. Other than speculation and counsel's conclusions, Plaintiffs present no evidence Sgt. Karsh failed to inspect other officers' weapon holsters.[8] Plaintiffs admit they have no evidence of wide spread violations of official uniform policy. (Pls.' Opp'n, p. 17, n. 7: 23-27)

Plaintiffs must prove this policy is "deliberately indifferent" to Ortega's Fourth Amendment right. Plaintiffs must present evidence which shows the City must "recognize[] [an] unreasonable risk and actually intend [] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *L.W. v. Grubbs*, 92 F.3d 894, 898-900. Plaintiffs offer no evidence to support the uniform inspection guide demonstrates the San Diego Police Department recognized the risk to Ortega and *actually intended* to expose Ortega to such risks without regard to the consequences to him. (Decl. Sharki, ¶¶1-4)

Finally, the lack of policy, or failure to enforce policy, must be the driving force behind the violation of Ortega's Fourth Amendment right. Officer McCarthy didn't fear for his life until Ortega tried to grab the back-up weapon, not once, but twice.[9] Officer McCarthy didn't use lethal force until Ortega tried to take his

---

[8] Fact discovery is closed and has been closed since February 21, 2014. [ECF no. 35]. Plaintiffs previously filed a motion to compel regarding this topic. The Court denied said motion. [ECF no. 57].

[9] (Decl. Cline, ¶¶2-3; Ex.s A, p. 32: 3-p. 35, p. 38-p. 48: 9, p. 53: 3-15, p. 77: 18-20, p. 87: 2-p. 88: 11, B, p. 47: 3-13, p. 48-49: 23, p. 53: 2-6, C, pp. 27-29, 42-48) [ECF no.'s 49-3, 49-4])

primary weapon. The driving force behind the violation was Ortega, not the San Diego Police Department's uniform policy. Plaintiffs offer no evidence of a causal link between the type of holster and the alleged violation.

### III. Plaintiffs Have No Evidence Supporting 51.7 or 52.1 State Claims.

Plaintiffs concede they have no evidence relating a 51.7 cause of action, instead request further discovery.[5] (Pls.' Opp'n, p. 22: 13-18).

52.1 "requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 959 (2012). The only fact evidence Plaintiffs offer for this cause of action is Officer McCarthy placed Ortega in a bear hug and used a leg sweep to effectuate an arrest. This is not sufficient to support a cause of action for violation of Civil Code section 52.1. Assuming Plaintiffs offered evidence establishing the first element (interference of constitutional right); Plaintiffs lack any evidence of an accompanied coercion. (Pls.' Opp'n, p. 23: 10-11)

### V. Plaintiffs Cannot Establish the Elements of Negligence.

Negligence requires causation. The actions of Ortega caused Officer McCarthy to fear for his life, not the gun lying on the ground. But for Ortega trying to take Officer McCarthy's weapons, not once, twice, but three times, Ortega would not have suffered damages.[9] Plaintiffs offer no inconsistent evidence.

### VI. Conclusion.

Defendants respectfully request its motion be granted because Plaintiffs' fail to present a triable issue of material fact.

Dated: June 16, 2014          JAN I. GOLDSMITH, City Attorney

By  s/ BRIAN K. CLINE
     Brian K. Cline
     Deputy City Attorney
     E-mail: bcline@sandiego.gov

Attorneys for Defendants