**EXHIBIT F**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SHAKINA ORTEGA, individually, and
as successor of interest of VICTOR
ORTEGA, deceased; TAMIA ORTEGA, a
minor, by and through her guardian
Shakina Ortega and JACOB ORTEGA, a
minor, by and through his guardian
Shakina Ortega,

          Plaintiffs,

  vs.                            Case No.
                                  13-CV-0087-LAB-JMA

SAN DIEGO POLICE DEPARTMENT, a
public entity; JONATHAN MCCARTHY,
an individual; CITY OF SAN DIEGO,
a public entity; and DOES 1
through 10,

          Defendants.

**CERTIFIED ORIGINAL**

(Page 115 is designated as CONFIDENTIAL and is bound
under separate cover)

VIDEOTAPED DEPOSITION OF SERGEANT ALAN KARSH

January 31, 2014

1:43 p.m.

1230 Columbia Street, Suite 400

San Diego, California

REPORTED BY:
Renee K. Papierniak
CSR No. 7056

1  A.  Well, he -- he started to tell me what had
2  happened.  Having been through these investigations
3  before, I stopped him.  I stopped him from telling me
4  exactly what happened.  I told him that the homicide
5  detectives would be showing up and would be asking him
6  questions like that.  That it wasn't my role to get
7  information from him.
8  Q.  Before you stopped him, what did he tell you?
9  A.  He said he had chased this person on foot and
10 they struggled.
11 Q.  What else?
12 A.  He had -- he had said something about his gun
13 and that there was a struggle over his gun, and that's
14 about it.
15 Q.  Did he say which gun because -- let me back up.
16    Officer McCarthy had a primary and secondary
17 weapon.  And you knew that at the time.  Correct?
18 MR. PHILLIPS:  Objection.  Calls for
19 speculation, lacks foundation.  If you know.
20 THE WITNESS:  Yeah, I didn't know if he had one
21 on him or not --
22 BY MS. DENNING:
23 Q.  Okay.
24 A.  -- before the incident.
25 Q.  Okay.  Let me go back and ask -- when he told

41

Alan Karsh
January 31, 2014

1  you there was a struggle over his gun, did he tell you
2  which gun?
3      A.  He -- again, it's very foggy.  He had told me
4  something about his backup gun had come out.  He had said
5  then they struggled over his primary weapon.
6      Q.  Did he tell you whether or not they struggled
7  over his backup weapon?
8      A.  He started to and I stopped him.
9      Q.  And why did you stop him?
10     A.  Again, that's the role of the homicide
11 detectives, not my role, to find out what happened at
12 that moment.
13     Q.  You're McCarthy's supervisor.  Is that
14 correct?
15     A.  That's correct.
16     Q.  Why, as his supervisor, did you not feel like it
17 was your role to find out what happened?
18     A.  I've been through these incidents before.
19     Q.  What does that mean?
20     A.  It means I've been on other scenes similar to
21 this, and I just know that the protocol for a supervisor
22 is not to find that information out.
23     Q.  So Officer McCarthy told you that his backup gun
24 had come loose.  Did he say how it came loose?
25     A.  I don't remember.

42

1   A. When he told me that there was a struggle over
2  the backup weapon and then there was a struggle over the
3  primary weapon.
4   Q. And what exact speculation did you make?
5   A. That they had a struggle over the weapons.
6  Whether or not he grabbed it, whether or not Officer
7  McCarthy smacked it away, I -- I don't know.
8   Q. So what specifically do you recall Officer
9  McCarthy telling you, before you stopped him, about his
10 backup weapon?
11  MR. PHILLIPS: Objection. Asked and answered.
12 You can answer again.
13  THE WITNESS: That it had come loose and there
14 was some kind of an issue with it, a struggle with it.
15 Whether or not this person grabbed it or whether he had
16 to smack it away before he grabbed it is what is in
17 question.
18 BY MS. DENNING:
19  Q. I understand it's what's in question. A big
20 question in this case. What I'm trying to find out is
21 what he actually told you. And I appreciate the position
22 that you're in here, but I get to find that out. And I'm
23 not trying to be harassing. I'm just trying to ask
24 questions that I'm entitled to ask and get the answers
25 that I'm entitled to get.

44

```
 1    Q.   And what did you think you heard?
 2    A.   That they had a struggle over the gun and he
 3  ended up shooting him with his primary weapon.
 4    Q.   The few words that you heard from Officer
 5  McCarthy, were they that there was a struggle over the
 6  gun or was it that Mr. Ortega picked up the secondary
 7  weapon and pointed it at Mr. -- or at Officer McCarthy?
 8    A.   Okay.  Well --
 9         MR. PHILLIPS:  If you need it read back --
10         THE WITNESS:  Yeah, please.
11         (Record read.)
12         MR. PHILLIPS:  Do you understand the question?
13         THE WITNESS:  I think so.
14         MR. PHILLIPS:  If you're not sure --
15         THE WITNESS:  No, I think I do.  And I think in
16  the briefing I told them that -- that the deceased did
17  grab the gun and began to point it at Officer McCarthy.
18  BY MS. DENNING:
19    Q.   Is that what Officer McCarthy had told you?
20    A.   Not exactly.
21    Q.   What exactly did he tell you?
22    A.   I said, I don't remember exactly what he told
23  me, exact words.  I made some assumptions trying to
24  describe a struggle over the gun and I gave the briefing
25  as best I could.
```

53

```
 1   stopped Officer McCarthy from speaking, that he never

 2   told you that Mr. Ortega grabbed the gun and pointed it

 3   at him?

 4            MR. PHILLIPS:  Objection.  Mischaracterizes his

 5   prior testimony.  Go ahead and answer.

 6            THE WITNESS:  I'm sorry, ask that again.

 7   BY MS. DENNING:

 8       Q.  Is it your testimony today, that Officer

 9   McCarthy never told you that Mr. Ortega grabbed the gun

10   and pointed it at him?

11            MR. PHILLIPS:  Same objections.

12            THE WITNESS:  It's -- my testimony is that

13   Officer McCarthy said a couple of words and I formulated

14   an opinion on those words.  I pieced it together myself

15   about what happened --

16   BY MS. DENNING:

17       Q.  Okay.

18       A.  -- generally.  Again, it was a struggle over the

19   gun, and that's -- that's how I tried to portray it.

20       Q.  So you made that up?

21            MR. PHILLIPS:  Objection.  Argumentative.  You

22   have to rephrase.  Don't answer.

23            MS. DENNING:  Well, I mean, are you instructing

24   him not to answer a question that is not privileged or --

25            MR. PHILLIPS:  I'm saying it's argumentative.
```

86

```
 1            MS. DENNING:  Okay.
 2            MR. PHILLIPS:  So I'm going to instruct him not
 3   to answer.  You can rephrase.
 4   BY MS. DENNING:
 5       Q.  Did you make that up, that Officer McCarthy --
 6   strike that.
 7           Did you make it up that Mr. Ortega grabbed the
 8   gun and pointed it at Officer McCarthy?
 9            MR. PHILLIPS:  Objection.  Mischaracterizes
10   prior testimony, argumentative, lacks foundation.  You
11   can answer.
12            THE WITNESS:  The answer is no, I didn't make up
13   anything.  I formulated an opinion about what happened.
14   BY MS. DENNING:
15       Q.  Based on a couple of words that we don't know
16   what they were?
17            MR. PHILLIPS:  Objection.  Mischaracterizes his
18   prior testimony, lacks foundation.  You can answer.
19            THE WITNESS:  No, not all.  Based on the words
20   that there was a struggle over the gun.  Okay.
21   Afterward, I'm -- I'm trying to piece this thing
22   together.
23   BY MS. DENNING:
24       Q.  So we go from a struggle over the gun, on the
25   one hand, to the briefing, that Victor picked up the gun
```

87

```
 1    STATE OF CALIFORNIA      )
                               )
 2    COUNTY OF SAN DIEGO      )

 3

 4            I, Renee K. Papierniak, a Certified Shorthand

 5    Reporter, do hereby certify:

 6            That prior to being examined, the witness in

 7    the foregoing proceedings was by me duly sworn to

 8    testify to the truth, the whole truth, and nothing but

 9    the truth;

10            That said proceedings were taken before me at

11    the time and place therein set forth and were taken

12    down by me in shorthand and thereafter transcribed

13    into typewriting under my direction and supervision;

14            I further certify that I am neither counsel

15    for, nor related to, any party to said proceedings, not

16    in anywise interested in the outcome thereof.

17            In witness whereof, I have hereunto subscribed

18    my name.

19

20    Dated:   February 17, 2014

21

22    _Renee K. Papierniak_____

23    Renee K. Papierniak
      CSR No. 7056
24

25
                                                          127
```