# EXHIBIT G

Lucien C. Haag
March 14, 2014

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SHAKINA ORTEGA, individually, and )
as successor of interest of       )
VICTOR ORTEGA, deceased, et al.,  )
                                  )
            PLAINTIFFS,           )
                                  )
     vs.                          ) 13-CV-87-LAB (JMA)
                                  )
SAN DIEGO POLICE DEPARTMENT, a    )
public entity, et al.,            )
                                  )
            DEFENDANTS.           )
_____)


DEPOSITION OF LUCIEN C. HAAG

SCOTTSDALE, ARIZONA

FRIDAY, MARCH 14, 2014

1:38 P.M.


REPORTED BY:  BARBARA MANNING, RPR
CERTIFIED REPORTER NO. 50827

1   were there any testing performed?
2       A    Observation of the unaided eye and closer
3   observations through a specialized microscope and then
4   photographs taken through that microscope.
5       Q    Were you able to tell that -- strike that.
6            Did you make any comparisons regarding the
7   abrasions on that gun and the actual pavement out at
8   that scene?
9       A    Yes, to the limited extent that I noted
10  when I was there and I noted in the crime scene
11  pictures that it's unpainted concrete.
12           That's why I made a note of it.  Because if
13  it's painted or we look at the gun and there is mineral
14  materials in there but it's got tan paint, that's more
15  like the stucco wall.  Stucco is not concrete, but it
16  comes close.  It's mineral material.
17           So to that extent my answer is yes, and
18  then of course when I looked at the gun, those abraded
19  areas actually have mineral grains embedded in them,
20  they are still there, I left them there, visible in
21  some of the photographs.
22      Q    As far as the revolver being found to fit
23  snugly in the ankle holster and was not prone to
24  falling out by gravity alone, how did you reach that
25  conclusion?

45

1   A   Well, I put it in the holster the way it would go, and I turned it upside down, shook it and then finally put a digital force gauge hooked on the gun and pulled.

The minimum I could get it out of the holster was about four pounds. The maximum was around six pounds of force needed to pull it out of the holster.

And the other thing that while again it's not physical evidence, it's an account that probably is not in dispute, but that there was a foot chase of some length. It's described in scene diagrams.

And it certainly didn't fall out during a vigorous foot chase the way Officer McCarthy has described it. It only falls out when this confrontation occurs in the breezeway.

Q   Did you make any attempts to reenact the confrontation or to engage in any sort of struggle with anyone in order to reach your conclusions that the revolver was found to fit snugly in the ankle holster?

A   Not beyond what I have described. I am too old to do that.

Q   And the fourth, the plaintiffs' contention exercised in point ten on page three of the complaint for damages is not supported by the physical evidence.

46

1  I wasn't quite following your four pound/six pound
2  description. Can you explain that again?
3       A   Yes. I think there is pictures certainly
4  in the CD I gave you, maybe in the report, of this gun
5  fully inserted in the holster.
6       Q   It is in your report. I remember seeing
7  it.
8       A   I have a digital force gauge that has a
9  hook, and I hooked it around the grip area that you can
10 see in that photograph.
11      Q   Figure ten?
12      A   Yes, the forward part of the grip. I held
13 the holster so I am not bulging it or pinching it and
14 pulled on the gun where I could get it to come out of
15 the holster.
16          And I said the minimum I could get was
17 about -- as far as my digital force gauge, was four
18 pounds. The highest was six.
19      Q   What does that mean, four pounds?
20      A   Well, I guess if I were trying to give a
21 jury some idea, I'd take something you are all familiar
22 with like a pound of butter about this big.
23          Imagine six of those. If we tie them
24 together and put a string on it, you are going to take
25 this gun and holster and have it upside down and rip

51

```
 1    that string over the grip, and it's going to pull the
 2    gun out.
 3              But four of those pounds of butter might
 4    not.  It might, but somewhere in between is the range.
 5    Four might pull it out.  Three pounds it's going to
 6    stay in there, two and one and so on.  It's the best I
 7    can tell you.
 8         Q    Did you have anyone on your behalf do
 9    anything involving physical exertion with respect to
10    this gun's retention ability?
11         A    No.
12              MR. CLINE:  Objection, vague and ambiguous
13    as to exertion.
14    BY MS. DENNING:
15         Q    Did you have anybody working with you on
16    this file?
17         A    No.
18         Q    Did you read the reports and notes of
19    criminalist Frank Healy in this case?
20         A    Yes.
21         Q    Did you read his deposition?
22         A    I don't think so, no.
23         Q    Did you note that he was originally given
24    information that Victor Ortega grabbed the secondary
25    weapon and pointed it at Officer McCarthy?
```

52

Lucien C. Haag
March 14, 2014

```
 1   STATE OF ARIZONA   )
                        ) SS
 2   COUNTY OF MARICOPA )

 3

 4          BE IT KNOWN that the foregoing testimony was

 5   taken by me, BARBARA MANNING, RPR, Certified Reporter,

 6   No. 50827; that the witness before testifying was duly

 7   sworn to testify to the whole truth; that the questions

 8   propounded to the witness and the answers of the

 9   witness thereto were taken down by me in shorthand and

10   thereafter transcribed under my direction; that the

11   foregoing pages are a true and accurate transcript of

12   all proceedings had upon the taking of said testimony,

13   all to the best of my skill and ability.

14          I FURTHER CERTIFY that I am in no way related

15   to any of the parties hereto; nor am I in any way

16   interested in the outcome hereof.

17          DATED at Scottsdale, Arizona, this 19th day

18   of March, 2014.

19

20                              _____
                                BARBARA MANNING
21                              Certified Reporter
                                Certificate No. 50827
22

23

24

25
                                                      73
```